1  **WO**

2

3

4

5

6      **IN THE UNITED STATES DISTRICT COURT**

7      **FOR THE DISTRICT OF ARIZONA**

8

9   Alexander Duane Odette,                    No. CV-20-02450-PHX-DGC

10                  Petitioner,                **ORDER**

11   v.

12   David Shinn,

13                  Respondent.

14

15

16          Petitioner Alexander Odette is confined in Arizona state prison.  He commenced

17   this federal action by filing a petition for writ of habeas corpus under 28 U.S.C. § 2254.

18   Doc. 1.  Magistrate Judge John Boyle has issued a report recommending that the Court

19   deny the petition and a certificate of appealability ("R&R").  Doc. 22.  Odette has filed an

20   objection to which the government has responded.  Docs. 25, 28.  Odette also filed a reply

21   to the government's response (Doc. 29), and the government has filed a motion to strike

22   the reply (Doc. 30).  The motion to strike is fully briefed (Docs. 30, 31, 32) and Odette

23   filed a sur-reply (Doc. 33).  For reasons stated below, the Court will accept the R&R and

24   deny the petition and certificate of appealability.  The Court will also deny the motion to

25   strike as moot.

26   **I.      Background.**

27          Odette challenges the sentence imposed after his guilty plea in Maricopa County

28   Superior Court case number CR2016-124829-001.  Doc. 1 at 1.  Odette pled guilty to

1   sexual contact with a minor and two counts of attempt to commit sexual conduct with a

2   minor.  In accord with the parties' plea stipulations, the superior court imposed a slightly

3   mitigated 19-year prison sentence for the completed offense and lifetime probation for the

4   attempted offenses.  Doc. 16-1 at 58; *see also State v. Odette*, No. 1 CA-CR 19-0090 PRPC,

5   2019 WL 4271907, at *1 (Ariz. Ct. App. Sept. 10, 2019).  Odette timely sought post-

6   conviction relief ("PCR"), which was denied.  *Odette*, 2019 WL 4271907, at *1.[1]  The

7   Arizona Court of Appeals granted review and denied relief.  *Id.* at *2.  Odette did not seek

8   review by the Arizona Supreme Court, and the Court of Appeals issued its mandate on

9   December 9, 2019.  Doc. 16-2 at 125.

10  **II.    Federal Habeas Standards.**

11  **A.    Timeliness.**

12  In the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Congress

13  established a one-year limitation period for the filing of federal habeas petitions.  28 U.S.C.

14  § 2244(d); *see Pliler v. Ford*, 542 U.S. 225, 230 (2004).  The period generally begins to

15  run when the state conviction and sentence become "final by the conclusion of direct

16  review or the expiration of the time for seeking such review."  § 2244(d)(1)(A).

17  Statutory tolling is available for the time during which a "properly filed" PCR

18  proceeding is pending in state court.  § 2244(d)(2).  Equitable tolling applies where the

19  petitioner shows that some "extraordinary circumstance" prevented him from filing on time

20  and that he has diligently pursued his rights.  *See Luna v. Kernan*, 784 F.3d 640, 646 (9th

21  Cir. 2015) (citing *Holland v. Florida*, 560 U.S. 631, 649 (2010)).

22  **B.    Exhaustion and Procedural Default.**

23  Under the AEDPA, a federal court is prohibited from granting habeas relief unless

24  the petitioner has "exhausted the remedies available in the courts of the State[.]"  28 U.S.C.

25  § 2254(b)(1)(A); *see O'Sullivan v. Boerckel*, 526 U.S. 838, 842 (1999); *Kyzar v. Ryan*, 780

26  F.3d 940, 946 (9th Cir. 2015).  "[T]he exhaustion doctrine is designed to give the state

27

28  [1] Appointed PCR counsel reviewed Odette's file and found no colorable claim for relief, so Odette represented himself in his PCR proceedings.  *Id.*

- 2 -

1   courts a full and fair opportunity to resolve federal constitutional claims before those claims

2   are presented to the federal courts[.]" *O'Sullivan*, 526 U.S. at 845.  To "fairly present" a

3   federal claim in state court, the petitioner must provide the factual and legal basis for the

4   claim. *Scott v. Schriro*, 567 F.3d 573, 582 (9th Cir. 2009).  He must "make the federal

5   basis of the claim explicit either by specifying particular provisions of the federal

6   Constitution or statutes, or by citing to federal case law." *Insyxiengmay v. Morgan*, 403

7   F.3d 657, 668 (9th Cir. 2005); *see also Johnson v. Zenon*, 88 F.3d 828, 830 (9th Cir. 1996).

8           An unexhausted claim is procedurally defaulted where state procedural rules make

9   a return to state court futile.  *See Coleman v. Thompson*, 501 U.S. 722, 735 n.1 (1991)

10  (claims are barred from habeas review when not first raised before state courts and those

11  courts "would now find the claims procedurally barred").  A federal court may not consider

12  the merits of a procedurally defaulted claim unless the petitioner establishes cause for the

13  default and actual prejudice, or shows that a miscarriage of justice would result.  *See*

14  *Coleman*, 501 U.S. at 750-51; *Schlup v. Delo*, 513 U.S. 298, 321 (1995).  Under the cause

15  and prejudice test, the petitioner must show that some external cause prevented him from

16  following the procedural rules of the state court and fairly presenting his claim.  *See*

17  *Robinson v. Ignacio,* 360 F.3d 1044, 1052 (9th Cir. 2004) ("[C]ause is an external

18  impediment such as government interference or reasonable unavailability of a claim's

19  factual basis.").  A fundamental miscarriage of justice exists when a constitutional violation

20  has resulted in the conviction of one who is "actually innocent." *Schlup*, 513 U.S. at 327.

21          Where the petitioner attempts to exhaust a federal claim in state court and the claim

22  is deemed waived for "noncompliance with a state procedural rule, the federal claim is

23  procedurally defaulted[.]" *Smith v. Or. Bd. of Parole & Post-Prison Supervision*, 736 F.3d

24  857, 862 (9th Cir. 2013) (citing *Wainwright v. Sykes*, 433 U.S. 72, 90-91 (1977)).  This

25  procedural default rule applies where the state procedural rule provides an "adequate and

26  independent state law basis on which the state court can deny relief." *Hurles v. Ryan*, 752

27

28

1     F.3d 768, 780 (9th Cir. 2014) (quoting *Bennett v. Mueller*, 322 F.3d 573, 580 (9th Cir.

2     2003)).[2]

3         **C.    Merits.**

4         "In conducting habeas review, a federal court is limited to deciding whether a

5     conviction violated the Constitution, laws, or treaties of the United States." *Estelle v.*

6     *McGuire*, 502 U.S. 62, 68 (1991).  A state prisoner, therefore, may not obtain federal

7     habeas relief for errors of state law.  *See id.* at 67-68 ("[W]e reemphasize that it is not the

8     province of a federal habeas court to reexamine state-court determinations on state-law

9     questions."); *Swarthout v. Cooke*, 562 U.S. 216, 219 (2011) ("We have stated many times

10    that federal habeas corpus relief does not lie for errors of state law.") (citations omitted);

11    *Little v. Crawford*, 449 F.3d 1075, 1083 (9th Cir. 2006) ("A violation of state law standing

12    alone is not cognizable in federal court on habeas.") (citations omitted).

13        With respect to the merits of exhausted and cognizable federal claims, the AEDPA

14    requires federal courts to defer to the last reasoned state court decision.  *See Murray v.*

15    *Schriro*, 882 F.3d 778, 801 (9th Cir. 2018).  Habeas relief is not warranted unless the

16    petitioner shows that the state court's decision was (1) contrary to, or an unreasonable

17    application of, clearly established federal law as determined by the United States Supreme

18    Court, or (2) based on an unreasonable determination of the facts considering the evidence

19    presented in state court.  28 U.S.C. § 2254(d); *see Williams v. Taylor*, 529 U.S. 362, 412-13

20    (2000).  This deferential standard "demands that state court decisions be given the benefit

21    of the doubt."  *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002).  The AEDPA "reflects the

22    view that habeas corpus is a 'guard against extreme malfunctions in the state criminal

23    justice systems,' not a substitute for ordinary error correction through appeal."  *Harrington*

24

---

25        [2] "Arizona's waiver rules are independent and adequate bases for denying relief."
26    *Id.* (citing *Stewart v. Smith*, 536 U.S. 856, 859-60 (2002) (denials pursuant to Arizona
      waiver rules are independent of federal law); *Ortiz v. Stewart*, 149 F.3d 923, 931-32 (9th
27    Cir. 1998) (Arizona's waiver rules are consistently and regularly applied)); *see* Ariz. Rs.
      Crim. P. 32.2(a) (precluding claims not raised on appeal or in prior PCR petitions);
28    32.4(b)(3) (time limits for filing PCR petitions); 32.16(a)(1) (petitions for direct review
      must be filed within 30 days of the trial court's decision).

1  *v. Richter*, 562 U.S. 86, 102 (2011) (quoting *Jackson v. Virginia*, 443 U.S. 307, 332 n.5

2  (1979)).

3  **III.    Odette's Habeas Petition and Judge Boyle's R&R.**

4        Odette filed his habeas petition on December 16, 2020.  Doc. 1 at 16.  The petition

5  asserts four grounds for relief: (1) ineffective assistance of trial counsel based on counsel's

6  failure to challenge the state's motion to amend the indictment or present any meaningful

7  defense to the charges and "insist[ence]" that Odette plead guilty (*id.* at 6); (2) violations

8  of due process and equal protection based on untimely appointment of counsel and the

9  state's failure to follow various state statutes and court rules or to follow state sentencing

10 guidelines for first-time offenders (*id.* at 8); (3) abuse of discretion by the court based on

11 its decisions to allow a late filing from the government and not allow a reply brief from

12 Odette, Odette's non-receipt of a requested transcript, and allegedly erroneous information

13 in a transcript (*id.* at 9); and (4) failure by the state to follow various state court rules in the

14 adjudication of Odette's PCR petition (*id.* at 11).

15       On December 27, 2021, Judge Boyle recommended that the Court deny Odette's

16 petition.  Doc. 22.  He started by considering the timeliness of the petition, concluding that

17 it was untimely by one week, but that Odette may be entitled to equitable tolling based on

18 challenges presented by the COVID-19 pandemic.  *Id.* at 4.  Noting that Odette did "not

19 explain how the lockdown between April and November 2020, or any other time, caused

20 the untimely filing," Judge Boyle observed that the petition was overdue by only one week,

21 but that "the disruption caused by COVID-19 is significant."  *Id.* at 5.  Judge Boyle

22 ultimately recommended foregoing a decision on equitable tolling and timeliness because

23 the petition was "more easily resolved on other grounds."  *Id.*

24       Judge Boyle recommended that ground one be denied because, insofar as it asserted

25 ineffective assistance of counsel based on anything other than the voluntary and intelligent

26 nature of his plea, Odette waived claims for ineffective assistance by pleading guilty.  *Id.*

27 at 8.   Judge Boyle liberally construed Odette's assertion that his trial counsel was

28 "insistent" upon him taking a plea as attacking the voluntary nature of his plea, but

1   concluded that Odette did not show that his attorney was ineffective with respect to the

2   plea by, for example, providing deficient advice or failing to inform him of his options. *Id.*

3   Judge Boyle thus recommended that ground one be denied as either waived or without

4   merit. *Id.* at 10.

5        Judge Boyle recommended that ground two be denied because Odette waived any

6   challenges to pre-plea constitutional errors unless the error was jurisdictional. *Id.* Judge

7   Boyle also found Odette's claim that counsel was not appointed for him in a timely manner

8   to be unexhausted, procedurally defaulted, and without merit because the grand jury

9   proceeding was not a critical stage during which Odette was entitled to counsel. *Id.* at 11.

10  The remaining claims asserted in ground two, Judge Boyle concluded, are premised on

11  violations of state law, cannot be converted into federal issues simply by characterizing

12  them as violations of federal due process, and therefore are non-cognizable. *Id.* at 11-12.

13       Judge Boyle recommended that ground three be denied because Odette's claim that

14  he was wrongfully denied transcripts was unexhausted and procedurally defaulted. *Id.* at

15  12. The remaining claims in ground three allege procedural errors during Odette's PCR

16  proceeding and thus are non-cognizable. *Id.*

17       Judge Boyle recommended that ground four be denied because it asserts claims

18  based solely on the state court's application of state court rules. *Id.* at 13.

19  **IV.    R&R Standard of Review.**

20       The Court "may accept, reject, or modify, in whole or in part, the findings or

21  recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1). The Court "must

22  review the magistrate judge's findings and recommendations de novo if objection is made,

23  but not otherwise." *United States v. Reyna-Tapia*, 328 F.3d 1114, 1121 (9th Cir. 2003) (en

24  banc); *see also Thomas v. Arn*, 474 U.S. 140, 149 (1985).

25  **V.    Odette's Objections.**

26       **A.    Timeliness.**

27       Odette argues that extraordinary circumstances outside of his control made it

28  impossible for him to file his habeas petition within the statute of limitations. Doc. 25 at

1    2.  Because of the COVID-19 pandemic, Odette argues, there were substantial disruptions

2    in his ability to obtain legal documents and research his habeas claims.  *Id.*  He argues that

3    due to lockdowns and numerous COVID-19 cases among staff and inmates, the law library

4    – the only place he could get legal copies and applications for court filings – was accessible

5    only by appointment and there was significant competition for these appointments.  *Id.*  As

6    a result, he asserts, "[i]t took 6 weeks just to get a copy of the instant habeas corpus

7    application, then indeed another due to errors made."  *Id.*  Legal mail, he argues, was

8    likewise difficult to access as a result of the strain put on the prison by COVID-19.  *Id.*

9          The government argues that the court need not consider Odette's arguments

10   regarding equitable tolling because the R&R recommended withholding a finding on this

11   issue, but that in any case that Odette is not entitled to equitable tolling.  Doc. 28 at 2.  The

12   government argues that "[g]eneral claims of prison lockdowns and lack of access to the

13   law library as a result of the pandemic alone" are not extraordinary circumstances justifying

14   equitable tolling.  *Id.*  The government argues that Odette describes merely "general

15   difficulties" and fails to provide facts showing that the lack of access to the law library

16   actually prevented him from timely filing his habeas petition.  *Id.* at 3.

17         As recommended by Judge Boyle, the Court will forego deciding whether Odette is

18   entitled to equitable tolling.  The Court has discretion to decide whether the administration

19   of justice is better served by addressing the merits of a habeas petition or by dismissing it

20   as time barred.  Doc. 22 at 5; *Day v. McDonough*, 547 U.S. 198, 199 (2006).  The Court

21   will assume that Odette's petition is timely; the administration of justice is better served by

22   addressing its merits, to which the Court now turns.

23         **B.     Ground One.**

24         Odette objects to Judge Boyle's determination that he waived all claims for pre-

25   plea, non-jurisdictional constitutional violations by pleading guilty.  Doc. 25 at 5.  He cites

26   *Blackledge v. Perry*, 417 U.S. 21 (1974), arguing that the petitioner's guilty plea did not

27   bar him from raising a constitutional challenge.  Doc. 25 at 5.  Odette then argues that his

28   plea was not voluntary and intelligent due to incompetent advice from his attorney.  *Id.*  He

1   asserts that he "has a diagnosis of anxiety, opposition mood disorder, and PTSD from

2   combat," which makes him "more likely to have his will overborne, even if it is detrimental

3   to himself." *Id.*  These conditions, Odette argues, undermine the voluntary and intelligent

4   nature of his guilty plea.  *Id.*  Odette argues that "counsel, prosecution, and judge, while

5   off the record during change of plea conferences," overbore his will to proceed to trial.  *Id.*

6   at 6.  He argues that his counsel provided ineffective assistance because he was advised

7   that he faced 80 years in prison when in fact, as a first time offender, he faced a lesser

8   sentence under a state statute.  *Id.*  Odette also argues that his counsel's failure to object to

9   the prosecution's motion to amend the indictment constitutes ineffective assistance.  *Id.* at

10   7.  He further argues that counsel's plan to use insufficiency of evidence as the primary

11   defense was "ill chosen and renders counsel[']s overall representation constitutionally

12   defective." *Id.* at 8.

13       Judge Boyle correctly concluded that Odette waived his ineffective assistance

14   claims except to the extent that they implicate the voluntary and intelligent nature of his

15   guilty plea.  "[I]t is well-settled that an unconditional guilty plea constitutes a waiver of the

16   right to appeal all nonjurisdictional antecedent rulings and cures all antecedent

17   constitutional defects."  *United States v. Lopez-Armenta*, 400 F.3d 1173, 1175 (9th Cir.

18   2005).  In *Tollett v. Henderson*, 411 U.S. 258 (1973), the Supreme Court held that "[w]hen

19   a criminal defendant has solemnly admitted in open court that he is in fact guilty of the

20   offense with which he is changed, he may not thereafter raise independent claims relating

21   to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea."

22   *Id.* at 268.  Such petitioners "may only attack the voluntary and intelligent character of the

23   guilty plea by showing that the advice he received from counsel was not within

24   constitutional standards." *Id.*

25       *Blackledge v. Perry*, 417 U.S. 21 (1974), does not counsel otherwise.  In *Blackledge*,

26   the Court held jurisdictional challenges – that is, assertions of the "right not to be haled

27   into court at all" – were not waived by a guilty plea.  *Id*. at 30.  The Court distinguished

28   these from the challenges raised in *Tollett*, observing that "[a]lthough the underlying claims

1    in *Tollett* . . . were of constitutional dimension, none went to the very power of the State to

2    bring the defendant into court to answer the charge brought against him." *Id.* Unlike the

3    petitioner in *Blackledge*, who claimed double jeopardy, Odette does not bring a

4    jurisdictional challenge.  Rather, he challenges his trial counsel's "ill chosen" strategic

5    choices during pre-plea litigation.  He waived these challenges by pleading guilty. *Tollett*,

6    411 U.S. at 268.

7         Judge Boyle was also correct in concluding that Odette did not sufficiently attack

8    the voluntary or intelligent character of his plea.  He liberally construed Odette's allegation

9    in his petition that defense counsel was "insistent" on him taking a plea as implicating

10   voluntariness, but found that Odette did not allege how counsel was deficient with respect

11   to the plea.  Doc. 22 at 8.  Odette's objections raise a host of new arguments and factual

12   allegations, and he argues for the first time that he has been diagnosed with mental

13   impairments that caused his will to be overborne by counsel, the government, and the

14   judge's encouragements that he take a plea.  A district court, however, "is not required[] to

15   consider new evidence presented for the first time in a party's objection to a magistrate

16   judge's recommendation." *United States v. Howell*, 231 F.3d 615, 621 (9th Cir. 2000).  To

17   require a district court to do so would encourage "sandbagging" by "permit[ting] a litigant

18   to set its case in motion before the magistrate, wait to see which way the wind was blowing,

19   and – having received an unfavorable recommendation – shift gears before the district

20   judge." *Id.* at 622.  This would both be "fundamentally unfair" and frustrate the systemic

21   efficiencies provided by magistrate judges.  *Id.*

22        Even if the Court were to consider Odette's newly raised allegations, he has not

23   shown that the state court's resolution of this issue was contrary to or involved an

24   unreasonable application of clearly established federal law as determined by the Supreme

25   Court, or was based on an unreasonable determination of the facts in light of the evidence

26   presented to it.  *See* Doc. 22 at 9.  As Judge Boyle noted, the trial court in Odette's PCR

27   case ruled:

28

1
2
3
4
5
6
7
8

> Defendant Odette argues he wanted to go to trial but his attorney, the prosecutor, and judge continuously encouraged him to take the plea because they did not feel he should go to trial. This allegation is not factually supported by the record. At the change of plea proceeding, Defendant was advised of the rights he would give up by pleading guilty. He stated he wanted to give up those rights. Further, he stated no one had forced or threated him to get him to admit to the charges. During the settlement conference, Defendant's admissions made during the confrontation call were discussed at length and those admissions appeared to be the reason he chose to plead guilty for a reduced sentence. The Court finds no basis for post-conviction relief on this ground.

9

Doc. 22 at 9, quoting Doc. 16-2, Ex. L, at 66.[3]

10

The Court will accept Judge Boyle's recommendation that ground one be dismissed.

11

**C.    Ground Two.**

12

13

14

15

16

17

18

Odette argues that his "conviction is a direct result of not being assigned counsel timely enough to object to the grand jury proceeding[,]" and that the grand jury proceeding was a critical stage of the proceedings against him. Doc. 25 at 12. Odette also objects to Judge Boyle's determination that the other challenges he brings in ground two – that the state did not follow various state statutes and procedural rules – are non-cognizable on federal habeas review, arguing that a state court's violation of state law constitutes a violation of his federal right to due process. *Id.* at 3.

19

20

21

22

23

24

25

Odette's challenge to the timeliness of counsel's appointment is a pre-plea, non-jurisdictional challenge that was waived when Odette pleaded guilty. *Tollett*, 411 U.S. at 268. Nor has Odette shown a constitutional right to counsel during the grand jury stage of the criminal proceedings against him. Counsel is only guaranteed to criminal defendants during "critical stages of the criminal process." *Nunes v. Mueller*, 350 F.3d 1045, 1052 (9th Cir. 2003). A "critical stage" is a "trial like confrontation, in which potential substantial prejudice to the defendant's rights inheres and in which counsel may help avoid

26
27
28

---

[3] The Arizona Court of Appeals found Petitioner waived his ineffective assistance of counsel claims and did not address this specific allegation. Doc. 16-2, Ex. Q, at 122. This is the last reasoned decision in the record on this point. Petitioner did not allege his plea was involuntary in the Arizona Court of Appeals, so the claim is also unexhausted and procedurally defaulted without excuse.

1    that prejudice." *United States v. Leonti*, 326 F.3d 1111, 1117 (9th Cir. 2003).   The

2    "essence" of a critical stage is "the adversary nature of the proceeding, combined with the

3    possibility that a defendant will be prejudiced in some significant way by the absence of

4    counsel." *Id.* (internal quotations and citations omitted).   "A grand jury proceeding is not

5    an adversary proceeding in which the guilt or the innocence of the accused is adjudicated.

6    Thus, an accused has no right of cross-examination, or of introducing evidence to rebut a

7    prosecutor's presentation." *United States v. Salsedo*, 607 F.2d 318, 319 (9th Cir. 1979)

8    (internal quotations, citations, and alterations omitted).   Odette has not shown that he was

9    entitled to counsel during the grand jury proceedings.

10        Moreover, as Judge Boyle rightly concluded, Odette did not argue during his PCR

11   proceeding that he was deprived of counsel at a critical stage of the proceedings and thus

12   the claim is unexhausted and procedurally defaulted.   Doc. 22 at 11 (citing Doc. 16-2 at

13   11).   In his objections, Odette simply states that he "brought before the state a matter of

14   law in this case, so that the state [could] correct the errors in law."   Doc. 25 at 10.   But the

15   petition filed in his PCR proceeding asserts only a due process challenge to the grand jury

16   proceedings, arguing that he was not alerted to the proceeding, not that he was deprived of

17   counsel during it.   Doc. 16-2 at 11.   Odette thus did not fairly present this issue in state

18   court. *Insyxiengmay*, 403 F.3d at 668; *Johnson*, 88 F.3d at 830.[4]

19        Odette for the first time requests a stay so that he may return to state court and raise

20   any unexhausted issues.   Doc. 25 at 4.   But Odette would be precluded from relief based

21   on any ground waived in his previous post-conviction proceeding, rendering his proposed

22   return to state court futile and his unexhausted claims procedurally defaulted.   Ariz. Rs.

23

24        [4] Odette argues that he "presented his claims as clearly as he knew how" and urges
     the Court to hold him to a "less stringent standard" and interpret his arguments "creatively"
25   because of his pro se status.   Doc. 25 at 3, 10.   The Court indeed interprets pro se filings
     "liberally" and holds them to a "less stringent standard than formal pleadings drafted by
26   lawyers." *Hebbe v. Pliler*, 627 F.3d 338, 342 (9th Cir. 2010).   "This more lenient standard,
     however, applies only to the form of a motion and not to its merits." *Dema v. Arizona*, No.
27   CV-07-0726-PHX-DGC, 2008 WL 2941167, at *2 (D. Ariz. July 25, 2008) (citing *Tatum
     v. Christensen*, 786 F.2d 959, 963 n. 4 (9th Cir. 1986) (*overruled on other grounds by
28   Wallace v. Christensen*, 802 F.2d 1539 (9th Cir. 1986))).

1    Crim. P. 32.2(a), 33.2(a); *Coleman v. Thompson*, 501 U.S. 722, 735 n.1 (1991); *Beaty v.*

2    *Stewart*, 303 F.3d 975, 987 (9th Cir. 2002).[5]

3         Judge Boyle also correctly concluded that the other claims Odette raises in ground

4    two are not reviewable in federal habeas proceedings.  As noted above, a federal court

5    conducting habeas review is limited to deciding whether a conviction violated the

6    constitution, laws, or treaties of the United States.  *Estelle*, 502 U.S. at 68.  "It is not the

7    province of a federal habeas court to reexamine state-court determinations on state law

8    questions." *Id.* at 68-69; *see also Swarthout*, 562 U.S. at 219 ("We have stated many times

9    that federal habeas corpus relief does not lie for errors of state law.").  Odette merely argues

10   that a state's violation of state law constitutes a violation of his federal constitutional right

11   to due process.  Doc. 25 at 3, 11.  But he may not "transform a state-law issue into a federal

12   one merely by asserting a violation of due process." *Langford v. Day*, 110 F.3d 1380, 1389

13   (9th Cir. 1996).

14        Odette cites *Lambright v. Lewis*, 932 F. Supp. 1547 (D. Ariz. 1996), for the

15   proposition that a state's violation of state law constitutes a violation of the federal

16   constitutional right of due process.  Doc. 25 at 3.  But this is simply what the petitioner in

17   *Lambright* argued, not what the court held.  *See Lambright*, 932 F. Supp. at 1568.  The

18   *Lambright* court in fact rejected this argument, finding that the alleged violation of state

19   law – a multiple jury empanelment in a capital case – did *not* offend the federal constitution.

20   *Id.* at 1570.  Moreover, the Ninth Circuit affirmed this determination, reiterating that "[a]n

21   error of state procedure is not, ipso facto, federal constitutional error." *Lambright v.*

22   *Stewart*, 191 F.3d 1181, 1183 (9th Cir. 1999) (citing *Estelle*).

23        The Court will accept Judge Boyle's recommendation that the claims in ground two

24   be dismissed.

25   / / /

26        ⁵ Odette asks to be allowed to return to state court "to pursue the new Rule 33
27   (applying to defendants who pled guilty or no contest)." Doc. 25 at 4.  Rule 33.2 provides,
     however, that "[a] defendant is precluded from relief . . . based on any ground[] waived by
28   pleading guilty or no contest to the offense[.]"  Ariz. R. Crim. P. 33.2(a)(1) (emphasis
     added).  Rule 33 thus does not save Odette's claim from being procedurally defaulted.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

### D.     Ground Three.

Odette does not clearly object to any of Judge Boyle's conclusions regarding ground three.  He primarily urges that the state court abused its discretion by allowing the state to file an untimely response to his Rule 32 petition.  Doc. 25 at 10-11.  The Court liberally construes his argument as an objection to Judge Boyle's conclusion that the alleged state court errors in his PCR proceedings are non-cognizable, but finds the objection without merit because "alleg[ations of] errors in the state post-conviction review process [are] not addressable through habeas corpus proceedings."  *Cooper v. Neven*, 641 F.3d 322, 331-32 (9th Cir. 2011).  The Court will accept Judge Boyle's recommendation that ground three be dismissed.[6]

### E.     Ground Four.

Odette objects to Judge Boyle's determination that the claims he asserts in ground four are not cognizable.  Doc. 25 at 13.  He again argues that the state's violations of its rules violated his federal due process rights.  *Id.*  As already noted, Odette cannot make these issues reviewable merely by characterizing them as due process violations.  *Langford*, 110 F.3d at 1389.  The Court will accept Judge Boyle's recommendation that ground four be dismissed.

## VI.     Motion to Strike.

Odette has filed a reply to the government's response to his objections.  Doc 29.  The government moves to strike the reply because it is not permitted under the rules.  Doc. 30.  The Court has considered Odette's reply, and it does not affect the Court's analysis or rulings.  The motion to strike will be denied as moot.

## VII.     Certificate of Appealability.

Odette objects to Judge Boyle's recommendation that a certificate of appealability be denied.  Doc. 20 at 10.  But Odette has not shown a denial of a constitutional right, and

---

[6] Judge Boyle concluded that Odette's claim in ground three that he was wrongfully denied transcripts is procedurally defaulted.  Doc. 22 at 12.  Odette does not clearly object to this finding, and the Court notes that Judge Boyle is correct that the claim is unexhausted (*see* Doc. 16-2 at 76-84) and thus procedurally defaulted.

1   the Court concludes that no reasonable jurist would find that his claims warrant federal

2   habeas relief.  *See* 28 U.S.C. § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

3   **IT IS ORDERED:**

4   1.   Judge Boyle's R&R (Doc. 22) is **accepted**.

5   2.   Odette's habeas petition (Doc. 1) is **denied**.

6   3.   The government's motion to strike (Doc. 30) is **denied** as moot.

7   4.   A certificate of appealability is **denied**.

8   5.   The Clerk of Court is directed to enter judgment accordingly and terminate

9   this action.

10   Dated this 11th day of July, 2022.

11

12

13   David G. Campbell

14   David G. Campbell
     Senior United States District Judge

15

16

17

18

19

20

21

22

23

24

25

26

27

28